# Staunton.

## WILBURN AND OTHERS v. RAINES AND OTHERS.

Absent, Cardwell, J.

September 15, 1910.

1. HIGHWAYS—*Changes—Res Judicata.*—Where an application is made in good faith for changes in an existing road, and it is not alleged in any of the proceedings that the proposed changes are the same as those involved in previous applications, the matters prayed- for in the last application are not *res judicata* by reason of the adjudications on the previous applications.

2. CONSTITUTIONAL LAW—*Due Process—Road Law for Giles County.*— The special road law for Giles county (Acts 1908, p. 611) does not deprive the owner of the lands condemned for roads of his property without due process of law. It provides for the location of the road only after notice and hearing, with right of appeal to a second commission, and an unrestricted appeal to the circuit court of the county and a jury on the question of just compensation, and under the general law an appeal from the decision of the court and jury, both on law and fact, to this court.

3. EMINENT DOMAIN—*Power of Legislature—Delegation of Power— Due Process.*—The power of eminent domain is an incident of sovereignty and is vested solely in the legislature, subject to constitutional restriction. It may exercise the right, directly or indirectly, through such agencies and in such manner and to such extent as it pleases, subject to the constitutional provision that private property shall not be taken for public uses except upon making just compensation. Due process of law in this connection only requires that the power shall be exercised in subordination to established principles.

4. EMINENT DOMAIN—*Nature of Powers—Judicial Questions—Constitutional Law—Road Law for Giles County.*—The special road law for Giles county (Acts 1908, p. 611) does not conflict with section 88 of the Constitution in denying an appeal to this court except as to the amount of damages. The power of eminent domain is a legislative power to be exercised by the

legislature as it pleases. The ascertainment of the damages is a judicial question, and as to this provision is made for an appeal.

5. HIGHWAYS—*Appeals—Power of Legislature.*—While it is true that under the general road law there is an unrestricted appeal to this court, it is within the power of the legislature, by special enactment, to limit that right to judicial questions only.

6. STATUTES—*Titles—Constitutional Law—Road Law for Giles County.*—The special road law for Giles county (Acts 1908, p. 611) is not in conflict with section 52 of the Constitution forbidding an act embracing more than one object in its title. The general purpose of the act is expressed in its title, and the subordinate features of it are not incongruous with, but germane to, the general purpose, and that is all that is necessary.

7. HIGHWAYS—*Removing Obstructions.*—Not only road officers, but any citizens travelling the public roads of the Commonwealth, have the right to remove obstructions therefrom.

8. HIGHWAYS—*General and Special Laws—Yards, Gardens and Orchards.*—Special road laws are to be construed in connection with the general road laws of the State, and when silent on any subject the general law provides. Hence the invasion of yards, gardens, orchards or cemeteries, which is prohibited by the general law, is not authorized by silence of a special·law for any particular locality.

9. STATUTES—*Highways—Special Laws—Constitutionality.*—The Constitution of this State does not forbid the passage of special road laws where, in the judgment of the General Assembly, such enactment cannot be provided for by general law.

Appeal from a decree of the Circuit Court of Giles county. The bill, among other things, prayed for an injunction against certain road commissioners of Giles county, to enjoin them from proceeding to hear the petition of certain persons (named as defendants) for a change in a road mentioned in the bill, or "doing any acts towards opening or changing the road through the lands of" complainants. Decree for the defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*Johnson & Williams* and *Williams & Farrier*, for the appellants.

*McCormick, Henson & Brown*, for the appellees.

WHITTLE, J., delivered the opinion of the court.

This appeal is from a decree dismissing on demurrer a bill in equity by the appellant, impleading the board of road commissioners of Walker's Creek Magisterial District in Giles county, to have an act to provide for "the establishing, altering, discontinuing and working and keeping in repair the roads and bridges of that county," and for incidental purposes, as amended, approved March 14, 1908, declared unconstitutional. Acts 1908, p. 611.

Before considering the constitutional questions relied on, we shall notice the assignment of error, that the matters prayed for in the application for a change of roads are *res adjudicata.* This assignment rests upon the allegation, that on three previous occasions, covering a period of seventeen years, some of the present applicants had petitioned for the location or change of the same road through the land of the appellants.

The question whether the State ever exhausts its power of eminent domain in the matter of establishing public highways need not now be considered. It is an important public question and too rigid an application of the doctrine of *res adjudicata* to such proceedings by a few individuals so as to bind the State or the community at large might be attended with embarrassing consequences. Conditions are constantly changing and circumstances which did not exist at the time of the first refusal may subsequently arise and render the establishment of a new road or a change in an old one imperative. On the other hand, courts of equity are always open to restrain the abuse of the power.

In this case the good faith of the applicants is not questioned; and, moreover, it is not alleged that *the proposed changes are the same as those involved in previous applications.*

The bill assails the constitutionality of the act on two grounds: (1) Because it deprives the owners of their property for public use without due process of law; and, (2) because it denies them the right of appeal to this court except on the question of damages.

The act, to some extent at least, seems to have been modeled after the Pulaski county road law. Acts 1897-8, p. 97. That act provides that the application of five free-holders for changes in the location of roads shall be made to the road board composed of the chairman of the board of supervisors and the members of the board and road commissioners from the district affected. This board viewed the location and, if deemed advisable, made the changes, assessed damages to the land owners, and reported its action to the county court. The county court was not empowered to supervise or review the action of the road board, but merely directed the report to be recorded and notified the land owners of its action in order that they might appeal *on the question of damages.* Such appeal was either to a supplemental commission or to the county court. In other words the road was established *ex parte* and without the intervention of the court with right of appeal to the county court and jury only as to damages, and was final except on questions of law.

The Giles county act provides for a similar commission. the supervisor and road commissioner, who in case of disagreement can call in the county surveyor. Their view is not *ex parte*, but notice of time and place is given the land owners who may attend and offer evidence which the commission must consider, and be heard; and, to avoid local prejudice, with right of appeal to a commission from another district. Likewise, in all cases an appeal lies to the circuit

court and jury on the question of just compensation; and upon that question a further appeal lies from the decision of the court and jury to this court, both on law and fact, by virtue of the general law. The act thus provides for the location of the road only after notice and hearing, with right of appeal to a second commission, and unrestricted appeal to the court and jury and ultimately to this court on the question of just compensation.

This act is far more liberal to the land owner than the Pulaski county act. The latter act was construed by this court in *Painter* v. *St. Clair*, 98 Va. 85, 34 S. E. 989, and it was there held that it did not authorize the taking of private property without "due process of law." On that point the court said: "The act is also assailed as unconstitutional in that it takes the property of the citizen 'without due process of law.' The power of eminent domain is an incident of sovereignty. It is vested in the legislature, and it can only be set in motion by virtue of legislative enactment, by which the time, manner and occasion of its exercise are directed and controlled, except as restrained by the Constitution. The legislature is clothed with exclusive authority to determine when the necessity exists for exercising the power. It may exercise it directly, or it may select such agencies as it pleases, and confer upon them the right, subject only to the limitations contained in the Constitution, and with respect to it 'due process of law' only requires that it shall be exercised in subordination to the established principle, that private property cannot be taken for public use without the consent of the owner, save upon payment to him of just compensation. 10 Am. & Eng. Enc. of Law (2nd ed.), 309; *Chicago, &c. R. Co.* v. *Chicago*, 166 U. S. 226 (17 Sup. Ct. 581, 41, L. Ed. 979); Lewis on Eminent Domain, ss. 237, 238, 240, 242, 253, 254." *Commission of Fisheries* v. *Hampton Roads Oyster Asso.*, 109 Va. 565, 64 S. E. 1041.

The second ground of objection is that the act is in con-

flict with section 88, article VI, of the Constitution of Virginia, in that it denies an appeal to this court in a controversy "con cerning the condemnation of property * * * and a road-way," except as to the amount of damages.

This contention grows out of a misconception of the scope of the foregoing provision. The condemnation of private property for road purposes involves the exercise of dual functions.. The one, the power of eminent domain, as an attribute of sovereignty, may be exerted by the legislature "directly, or it may select such agencies as it pleases, and confer upon them the right." (*Painter* v. *St. Clair, supra.*) The other, the matter of ascertaining a just compensation for the property condemned, is judicial in its character and the owner is entitled to have that question investigated and determined by an impartial tribunal; and, by section 88 of the Constitution, with the ultimate right of appeal to this court. And this latter right is, as we have seen, fully safeguarded.

It is true that under the general road law there is an unrestricted right of appeal to this court; but it is also true that it is within the competency of the legislature, by special enactment, to limit that right to judicial questions only.

It was urged in argument that the act contravenes section 52, article IV, in that it embraces more than one object. It is a sufficient answer to this objection to say, that the general purpose of the act is expressed in the title, and that the subordinate features of it are not incongruous with, but are germane to the general object.

The rule in such case is well stated in 26 Am. & Eng. Enc. of Law, p. 588: "A title fairly expressing the general subject covers provisions for all proper means and instrumentalities which will or may facilitate the accomplishment or enforcement of the purpose expressed, such, for instance, as a provision prohibiting violations of the act, or prescribing a penalty or other punishment for violations."

This general statement of the law is in harmony with the

decisions of this court. See *Bertram* v. *Com'th*, 108 Va. 902, 62 S. E. 969 and cases cited.

It was also contended that the act is unconstitutional because it gives the road board authority to remove fences, woodpiles or other obstructions which may be in the road. The part of the Constitution which this section of the act is supposed to infringe is not pointed out, and no objection is perceived to investing road officers with power to remove obstructions from public highways. Indeed, it is a right possessed by any citizen having occasion to travel the public roads of the Commonwealth.

It was argued, however, that as no express limitations are imposed on the road board with respect to the location of yard, garden, orchard or cemetery for purposes of expropriation. This is a total misapprehension of the act, which must of course be construed in connection with the general road law, and when silent on any subject the general law, which prohibits such taking, prevails.

Other questions relied on in argument have been considered, but are not deemed of sufficient importance to demand special notice. The Constitution of Virginia does not forbid the passage of special road laws where in the judgment of the General Assembly such enactment cannot be provided for by general law (art. IV, sec. 64). And it is matter of common knowledge that for time out of mind such laws have been enacted in this State, many of which are now in force throughout the Commonwealth, and it would lead to disastrous consequences for the courts to declare them invalid upon an overstrict construction of legislative discretion.

Upon the whole case we find no error in the decree under review and it must be affirmed.

*Affirmed.*