Statement.

## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

### CARSON V. CITY OF RICHMOND AND OTHERS.

#### June 13, 1912.

#### Absent, Cardwell, J.

1. EMINENT DOMAIN—*Powers Construed Strictly.*—In proceedings to condemn land for a public use, the power conferred must be strictly construed, and the manner of executing it carefully observed and followed.
2. EMINENT DOMAIN—*Powers of Cities—Code (1904), Section ' 1105f.*—The provisions of section 1105f of the Code (1904), as far as they can be applied, govern cities in exercising the right to condemn property for their purposes.
3. EMINENT DOMAIN—*Powers of Commissioners—Apportioning Damages—Surplusage.*—Under the provisions of section 1105f of the Code (1904) commissioners appointed to assess the damages for land to be taken for a public use have no power, where there is a controversy or doubt as to who is entitled to such damages, or in what proportions, to pass upon or determine who is entitled to the same; and if, in their report of the damages assessed, they also attempt to apportion the damages amongst those entitled, the apportionment should be stricken out as surplusage.
4. EMINENT DOMAIN—*Duties of Commissioners—Questions of Title—Apportionment of Damages.*—Commissioners are peculiarly fitted for ascertaining a just compensation for land to be condemned, and the incidental damages provided for by statute, but they are rarely well qualified to settle intricate questions of law arising upon the determination of controversies between persons interested in, or claimants to, the land taken, or to the compensation and damages reported; and one of the objects of clause 14 of section 1105f of the Code (1904) was that the commissioners might not be obstructed in the prosecution of their work by controversies in respect to the title to or interest in the land sought to be taken, but to transfer such controversies from the land to the fund paid into court.

Error to a judgment of the Hustings Court of the city of Richmond in a condemnation proceeding. To a judgment apportioning the damages between the defendants, one of the defendants assigns error.

*Reversed in Part.*

The opinion states the case.

*J . P. Carson* and *W. P. DeSaussure,* for the plaintiff in error.

*H. R. Pollard* and *Christian, Gordon & Christian,* for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

This is a proceeding instituted by the city of Richmond to condemn certain lands for its purposes. One of the lots, a part of which was condemned, was subject to a ground rent for ninety-nine years, with the right of renewal to the lessee for successive terms forever. At the time of the institution of the proceeding the plaintiff in error, J. P. Carson, was the owner by assignment of the rights of the landlord under the lease, and the Old Dominion Steamship Company had acquired the rights of the lessee. Both Carson and the steamship company were parties to the proceeding. Commissioners were appointed as provided by section 1105f, Va. Code 1904, and ascertained and reported that a just compensation for the land taken was thirty-six hundred and twenty-five dollars, and that no damage would result to the residue of the property or to another person by reason of the taking. They further reported that, of the compensation reported, Carson, the owner of the ground rent to which the lot is subject, is entitled to the sum of $811.40 (which sum, capitalized at five *per cent.,* is equal to $40.57, by which the annual ground rent of $650.00 on the whole property must be credited), and that the steamship company is entitled to $2,813.60, the residue of the said sum of $3,625.00.

No exception was made to the said report as to the compensation allowed for the land taken (its fee simple value, as we understand the report), but Carson excepted to the report as to the manner in which the commissioners undertook to apportion or distribute that sum. His exception was overruled by the court and the report of the commissioners confirmed, and the compensation allowed, which had been paid into court, was directed to be paid to the parties in accordance with the report of the commissioners.

The first and second assignments of error may be considered together. They are as follows:

"First. The effort of the commissioners of appraisement to reduce the rent reserved in the lease from William Allison and wife to Lewis Ludlam, under which the Old Dominion Steamship Company holds the possession of the land, is illegal, *ultra vires,* and should not have been confirmed by the court.

"Second. The Hustings Court, being without jurisdiction in this proceeding to reform the said lease or vary the covenants, erred in confirming the said commissioners' report, and in ordering that the yearly rental of $650.00, payable in quarter yearly installments, * * * be reduced by the sum of $40.57 annually."

It is well settled in this State that in proceedings like this the power conferred must be strictly construed, and the manner of executing it carefully observed and followed. *Fisher* v. *Smith,* 5 Leigh (32 Va.) 611, 612; *Painter* v. *St. Clair,* 98 Va. 85, 34 S. E. 989; *C. & O. Ry. Co.* v. *Walker,* 100 Va. 69, 40 S. E. 633, 914.

Section 1105f of Va. Code, 1904, provides when and how any company chartered in this State, which is authorized to condemn lands, or any interest or estate therein, may acquire the same for its purposes; and by sub-section 25 of that section its provisions, as far as they can be applied, govern cities in exercising the right to condemn property for their purposes. That section prescribes the duties to be performed by the commissioners, the form of oath they are to take, and the form of report they are to make. From these are to be ascertained the extent of their powers.

By sub-sections 8 and 15 it is provided that the commissioners, after viewing the property or the interest or estate which is sought to be condemned and the adjacent property, and hearing evidence, shall ascertain what will be a compensation for the said property and land, or for such interest or estate therein as is proposed to be taken, and assess the damages, if any, to the adjacent or other property of such tenant or owner, or to the property of any other person, beyond the peculiar benefits that will accrue to such properties, respectively, from the construction and operation of the company's works.

By sub-sections 7 and 16 it is provided that, before executing the duties of his office, each commissioner shall take an oath to the

effect that he will faithfully and impartially ascertain what will be "a just compensation for such land (or such interest or estate in the land), of the freehold whereof * * * is tenant, and for such other property as is proposed to be taken by the * * * company for its purposes, and award the damages, if any, resulting to the adjacent and other property of said tenant or owner, and to the property of any other person, beyond the peculiar benefits that will accrue to such properties, respectively, from the construction and operation of the company's works. * * *"

By sub-sections 8 and 17 the form of the report the commissioners are required to make is prescribed. Their report must state by what court and for what purpose they were appointed, that they met on the day designated in the order or to which they were regularly adjourned, upon the land to be condemned, the limits of which were described to them and which they are required to describe in their report; that they were duly sworn; and that upon such evidence as was before them they "are of opinion and do ascertain, that for the said part (or for the estate or interest in the part) and for the other property so taken * * * will be a just compensation, and the damages to the adjacent and other property of said tenant or owner, and to the property of other persons, who will be damaged in their property by reason of the construction and operation of the works of said company, beyond the peculiar benefits that will accrue to such properties, respectively, from the construction and operation of such works, are * * *"

In order to enable the court to properly dispose of money paid into court, sub-section 14 provides that "it may have inquiries by a commissioner to ascertain what persons are entitled thereto, and in what proportions; and may make an order of publication requiring all interested to appear before the commissioner, that their respective claims may be passed upon. After such reference to a commissioner, and such publication, the court shall make such disposition of the money so paid into court as may seem to it right."

From these and other provisions of section 1105f it is clear, we think, that the commissioners appointed to ascertain and report the compensation for the land, or interest or estate therein, taken,

and the additional damages, if any, provided for, have no power, where there is a controversy or doubt as to who is entitled to such compensation or damages, or in what proportions, to pass upon or determine who is entitled to the same. Neither the statute authorizing the appointment of the commissioners, the order appointing them, the oath they take, nor the report they are required to make, impose any such duty or confer any such power upon them. On the contrary, provision is expressly made (sub-section 14) for determining, in case of controversy or doubt, the parties to whom, and in what proportions, such compensation and damages are to be paid.

One of the objects of sub-section 14 was that the condemning body might not be obstructed in the prosecution of its work by controversies in respect to the title to or interest in the land sought to be taken, but to transfer such controversies from the land to the fund paid into court. *Richmond, &c. R. R. Co.* v. *Seaboard, &c. Co.,* 103 Va. 399, 49 S. E. 512; *Swann* v. *Washington, &c. R. R. Co.,* 108 Va. 282, 287, 61 S. E. 750. When a report has been made, the sums ascertained by it may be paid into court by the condemning party, and it may enter and construct its work upon the land described in the report, although the proceedings are still pending. (Sub-section 11.)

For the duties of ascertaining a just compensation for the land to be condemned and the incidental damages resulting from the taking and the construction and operation of the works constructed and operated thereon—duties expressly imposed by the statute—the commissioners are peculiarly fitted. *Richmond, &c. Co.* v. *Seaboard, &c. Co., supra,* and authorities cited. But for determining controversies between persons interested in, or claimants to, the land taken, or to the compensation and damages reported, the proper decision of which depends frequently upon intricate questions of law, such commissioners, as a rule, are ill qualified. It is true that in some jurisdictions all these duties are imposed upon the commissioners or juries who ascertain the compensation and assess the damages. This seems to be the case in the State of Maryland, as shown by the case of the *Mayor and City of Baltimore* v. *Latrobe and Others,* 101 Md. 621, 61 Atl. 203, so much relied on by the counsel of the defendant in error. The

statutes in that State seem to materially differ from ours. But while under our statutes the commissioners to ascertain the compensation, etc., for the land condemned have no such power, it is clear, we think, that the court having jurisdiction of the condemnation proceedings has full power, under the provisions of sub-section 14 of section 1105f, to ascertain the rights and interests of the claimants to the fund, and, in the language of that section, "to make such disposition of the money so paid into court as may seem to it right."

It follows from what has been said that we are of opinion that so much of the report of the commissioners as attempted to make disposition of the money ascertained by them to be a just compensation for the land taken was in excess of their powers, and ought to have been stricken out as surplusage, and the report in other respects only confirmed. *Swann* v. *Washington, &c. R. R. Co., supra,* and cases cited.

At a day subsequent to the confirmation of the report of the commissioners, the hustings court, without any hearing on its part, or having inquiries made as to who was entitled to the fund, as provided by sub-section 14 of section 1105f, entered an order distributing the fund paid into court in accordance with the report of the said commissioners. The rights of the parties claiming the fund in court have never been considered or ascertained in the manner prescribed by the statute.

The court is of opinion that the order of the hustings court confirming the commissioners' report, and all proceedings in the case subsequent thereto and based thereon, are erroneous and must be reversed; and this court, without passing upon any other question involved in the case, will enter such order as the hustings court ought to have entered, striking out as surplusage so much of the commissioners' report as attempted to dispose of the compensation allowed for the land taken, and confirming the said report in other respects, and will remand the cause to the hustings court, with directions to proceed, in the manner provided by sub-section 14 of section 1105f of the Code, to ascertain the rights of the claimants to the fund paid into court, and to dispose of it accordingly.

*Reversed in Part.*