# Richmond

J. W. HANNABASS V. MARYLAND CASUALTY COMPANY, ETC.

January 13, 1938.

Present, All the Justices.

The opinion states the case.

*George E. Allen, George E. Allen, Jr., M. J. Fulton* and *R. R. Parrish,* for the plaintiff in error.

*Sinnott & May* and *V. P. Randolph, Jr.,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

J. W. Hannabass, plaintiff in error, instituted in the lower court an action for damages, by way of notice of motion for judgment, against the Maryland Casualty Company, a foreign corporation. The action was based upon an

alleged breach of a certain automobile liability and indemnity insurance contract issued by the defendant in error to J. W. Hannabass. A demurrer was interposed and later sustained by the trial court, and the notice of motion was dismissed.

The facts are not in dispute. The question presented here is purely one of law and involves the construction and interpretation of the Traffic Code of the city of Richmond and the Virginia Operators' and Chauffeurs' License Act of 1932 (Code 1936, section 2154 (170) *et seq.*).

Prior to June 1, 1933, J. W. Hannabass was the holder of a liability and indemnity policy contract whereby the Maryland Casualty Company agreed to cover a certain Buick automobile and to indemnify him against accidents occurring within the continental limits of the United States and Canada which might be caused by or result from the ownership and operation by him of the Buick automobile. It was further provided in the contract of insurance that the insurer would investigate all accidents and claims, defend all suits brought in connection with the operation of the automobile, and pay all expenses incurred in and about the investigation and defense of such suits, including the court costs and premiums on appeal bonds that might be required.

While the indemnity contract of insurance was in full force and effect an accident occurred in which the automobile covered by the contract of insurance was involved. It occurred on the 1st day of June, 1933, and at the time the automobile was being driven on the streets of the city of Richmond by a minor son of J. W. Hannabass, who was over the age of fourteen years but under the age of sixteen. He was operating the car under an operator's license issued to him by the Division of Motor Vehicles of the State of Virginia, under the act of the General Assembly referred to, approved March 29, 1932. (Acts 1932, ch. 385, p. 775, Code 1936, section 2154 (170) *et seq.*) He was not operating the automobile under a permit required by section 65 of the Traffic Code of the city of Richmond.

As a result of the accident, several actions at law were instituted against J. W. Hannabass by those whe were injured by reason of the operation of the car, one of which reached this court, *Hannabass* v. *Ryan*, 164 Va. 519, 180 S. E. 416. In compliance with the terms and provisions of the policy contract he gave timely notice of the accident to the Maryland Casualty Company and requested it to investigate the accident and defend the claims arising therefrom. The insurance company refused to do this, claiming that by reason of the following provision in the policy contract, the automobile was not covered and the insured was not protected at the time of the accident: "This policy does not cover * * * said automobile * * * while the said automobile * * * is being operated by any person under the age limit fixed by law or under the age of 14 years in any event."

The contention was made that, inasmuch as the automobile was being operated by a minor under the age of 16 years and in violation of section 65 of the Traffic Code of the city of Richmond, no recovery could be had.

Section 65 is as follows:

## "AN ORDINANCE

### "(Approved May 15, 1931)

"Be it ordained by the Council of the City of Richmond:

"1. That Section 65 of Chapter 40, Richmond City Code, 1924, concerning 'The Regulation of Travel and Traffic upon the Streets of the City of Richmond,' in relation to driving permits, be amended and reordained so as to read as follows:

"Section 65. No person shall operate a motor vehicle upon the streets of the City of Richmond, without having first obtained a permit in writing from the Chief of Police, who shall first be satisfied of the ability of such person to operate a motor vehicle and of his knowledge of the traffic laws of the City of Richmond, which permit shall always be carried by the person to whom issued, and shown to any police officer or citizen upon request; provided, that no such

permit shall be issued to any person under the age of sixteen (16) years.

"Conviction of a felony, of violation of the provisions of the prohibition law with reference to the transportation of ardent spirits or driving under the influence of intoxicants, of failure to stop any vehicle involved in an accident resulting in injury or death to any person, or conviction of the offense of speeding three (3) times within twelve (12) months, shall operate to revoke such driving permit for a period of twelve (12) months. For the renewal of any permit issued under authority of this section by reason of the original having been revoked the person making application therefore, shall pay a fee of two dollars ($2.00). This section shall not apply to non-residents remaining in the City less than forty-eight (48) hours. Any person violating the provisions of this section by operating a motor vehicle upon the streets of the City of Richmond without having secured a permit so to do, shall be liable to a fine of not less than five dollars ($5.00) nor more than twenty-five dollars ($25.00) for each offense, each day's continuance to constitute a separate offense, and any person operating a motor vehicle upon the streets of the City of Richmond whose permit has been revoked under authority of this section, shall be liable to a fine of not less than fifty dollars ($50.00) nor more than five hundred dollars ($500.00), or imprisonment for not more than thirty (30) days, either or both in the discretion of the Justice trying the case, each day's continuance to constitute a separate offense, said fines to be recoverable before, and said penalty to be imposed by the Police Justices of the City of Richmond, as the case may be."

Counsel for plaintiff in error contend that the entire section 65 is invalid because the substantial part or parts thereof has or have been superseded by the Virginia Operators' and Chauffeurs' License Act of 1932, referred to above, and that the minor was not operating the automobile at the time of the accident contrary to law because at that time he held

an operator's license under section 7(a) of said Virginia Operators' and Chauffeurs' License Act.

The entire case of the plaintiff in error rests solely upon the invalidity of section 65 of chapter 40 of the Traffic Code of Richmond, as amended on May 15, 1931. This section has been set out above. The declared purpose of the ordinance was: "This ordinance shall be so interpreted and construed as to effectuate its general purpose to make uniform the laws of the State of Virginia relating to motor vehicles and their operation."

Under section 65 it will be observed that no person was permitted to operate a motor vehicle upon the streets of Richmond without having first obtained from the chief of police a written permit. This permit was revocable by the chief of police in his discretion but the revocation was not to exceed the period of 12 months.

"Provided, that no such permit shall be issued to any person under the age of 16 years." Any person violating this ordinance "by operating a motor vehicle upon the streets * * * without having secured a permit so to do shall be liable to a fine * * *."

Under the Operators' and Chauffeurs' License Act of 1932, section 1(e), (Acts 1932, ch. 385, p. 775, Michie's Code 1936, section 2154 (170) *et seq.*), a "highway" is defined as, "every way or place of whatever nature open to the use of the public for purposes of vehicular travel in this State, including the streets and alleys in towns and cities." (Code 1936, section 2154 (170) (e)).

Section 2, Code 1936, section 2154 (171), reads in part, "No person * * * shall drive any motor vehicle upon a highway in this State unless such person * * * has been licensed as an operator * * * as hereinafter provided."

Section 3(a), Code 1936, section 2154 (172) (a), reads in part, "* * * Counties, cities and towns of this State are hereby expressly prohibited from requiring any other operator's license or local permit to drive, except as herein provided for, * * *."

Section 5(a), Code 1936, section 2154 (174) and note, reads in part, "No operator's license shall be issued to any person under the age of sixteen years, except as hereinafter provided * * *."

Section 7(b), Code 1936, section 2154 (176) (b), provides that, "An operator's license may be issued to a minor between the ages of fourteen and sixteen years, * * * provided further, that no such minor shall drive a motor vehicle on the streets and alleys of any city in this State if prohibited from so doing by a proper city ordinance."

The trial court, in sustaining the demurrer and dismissing the notice of motion, handed down an able and exhaustive opinion in which it was held that a portion of section 65 was invalid because in conflict with the subsequent act of the General Assembly, but by reason of the provision in section 66 of the ordinance, which provided that "if any part * * * sentence, clause or phrase of this ordinance * * * is * * * declared to be unconstitutional, such decision shall not affect the validity of the remaining portions of this ordinance," the remaining portion of section 65 could be severed from the invalid portion and sustained as a valid act. This would leave standing, according to the trial court, the following part of the act: "No person shall operate a motor vehicle upon the streets of the city of Richmond under the age of 16 years," with no penalty for a violation of the act. This was held by the court to be sufficient to prohibit any person under 16 years of age from driving a motor vehicle on the streets of Richmond and would constitute a "proper" city ordinance under section 7(b) of the Virginia Operators' and Chauffeurs' License Act.

It is pertinent to observe that section 65 of the ordinance became effective on May 15, 1931, while the act of the legislature touching the same subject as that embraced in the ordinance was not approved until March 29, 1932.

There is an obvious conflict between the city ordinance and the subsequent act of the legislature and it is conceded that in so far as there is a conflict the State law prevails. It is also agreed that so much of the city ordi-

nance as requires a person to secure a permit from the chief of police before he is permitted to drive on the streets of Richmond is in conflict with and rendered invalid by the State legislation. But after the invalid part is stricken from the ordinance, does there remain a proper ordinance forbidding minors under 16 years of age from driving on the city streets? The defendant in error maintains that sufficient remains, while the plaintiff in error contends that the invalid portion of the ordinance is the major portion of it, and that the invalid and the valid portions are so intertwined and interwoven that the invalid portion permeates the whole and cannot be separated therefrom. He contends that the whole of section 65 must fall.

The true rule is laid down in *Strawberry Hill Land Corporation* v. *Starbuck and others,* 124 Va. 71, 97 S. E. 362, 364, where Judge Prentis speaking for the court said: "The rule is that an act may be valid in one part and invalid in another, and if the invalid is severable from the remainder, that invalid part may be ignored, if after such elimination the remaining portions are sufficient to accomplish their purpose in accordance with the legislative intent; and that only if the void portion is the inducement to the passage of the act, or is so interwoven in its texture as to prevent the statute from becoming operative in accordance with the will of the legislature, is the whole statute invalid."

In *Bertram* v. *Commonwealth,* 108 Va. 902, 62 S. E. 969, 971, the court quoted the following from prior Virginia cases: "A statute may be constitutional in some of its provisions and unconstitutional in others, but if the parts can be so separated as that each can stand as the will of the legislature, the good does not perish with the bad;" but when the good cannot be separated from the bad and leave standing an act which represents the intent of the legislative body, the rule laid down in *Black* v. *Trower,* 79 Va. 123, applies. There it is said that "when the valid part is so connected with and dependent on that which is void, as that the parts are not distinctly separable, so that each can stand

alone as the will of the legislature, the whole must fall." (Citing authorities.)

Other cases are *Lambert* v. *Smith,* 98 Va. 268, 38 S. E. 938; *Danville* v. *Hatcher,* 101 Va. 523, 44 S. E. 723; *Miller* v. *Town of Pulaski,* 109 Va. 137, 63 S. E. 880, 22 L. R. A. (N. S.) 552; *Town of Narrows* v. *Board of Supervisors, etc.,* 128 Va. 572, 105 S. E. 82; *Chesapeake & O. Canal Co.* v. *Great Falls Power Co.,* 143 Va. 697, 129 S. E. 731; *Breckenbridge* v. *County School Board,* 146 Va. 1, 135 S. E. 693; *Poindexter* v. *Greenhow,* 114 U. S. 270, 5 S. Ct. 903, 962, 29 L. Ed. 185, and *Smith* v. *Thompson,* 219 Iowa 888, 258 N. W. 190.

In *Chicago, etc., Ry. Co.* v. *City of Minneapolis,* D. C., 238 F. 384, 402, the court said: "It is true that statutes and ordinances may be and sometimes are held by the courts valid in part and invalid in part. The test is, Has the legislative body manifested an intention to deal with a part of the subject-matter covered, irrespective of the rest of the subject-matter? If such intention is manifest the subject-matter is separable, otherwise not."

In 6 R. C. L., Constitutional Law, section 125, it is said: "It may therefore be stated, as an additional test for determining whether the provisions of a statute are severable, that whenever the ruling feature of a law, as an essential part from which remaining portions take their cast, is unconstitutional, the act must fall as a whole."

As previously stated, the declared purpose of the ordinance was to make uniform the laws of the State relating to the operation of motor vehicles. At the time of the enactment of the ordinance the Virginia Operators' and Chauffeurs' License Law was not in existence. It is inconceivable that had the State law been in effect at the time the ordinance was passed, the council would, in the light of the declared purpose of the ordinance, have passed it, because to pass it would have tended to make ununiform, rather than uniform, the laws of the State regulating the operation of motor vehicles.

A careful reading of the ordinance discloses that an infant under 16 years of age is not forbidden or prohibited by the ordinance from driving on the streets of Richmond. The offense is failure to have a permit from the chief of police, and, as we have seen, the State law prohibits a town or city to require such a permit. When the requirement of a permit by section 65 of the ordinance was abrogated by the subsequent enactment of the legislature, its effect was to supersede the entire section, for no other independent subject-matter is contained in the ordinance.

If the holding of the trial court is adopted we would reconstruct the ordinance with the invalid part eliminated and prohibit minors under 16 years of age from driving a car in Richmond, when as a matter of fact the ordinance never prohibited them from driving. It simply withheld a permit from them. Therefore, after the provision for the permit from the chief of police was abrogated, it was no longer an offense for a minor under 16 years of age to drive on the streets of Richmond if he had a license from the Division of Motor Vehicles. We can not convert an ordinance, made for the purpose of requiring everyone to obtain from the chief of police a permit to 'drive, into one prohibiting a minor under 16 years of age to drive. This would amount to legislation by the court. We do not know that the council,—the legislative body, ever intended to pass such a law. The prime object of section 65 of the ordinance, was to require permits of all who desired to drive. Incidentally, no permit to drive would be issued to a minor under 16 years of age. Our conclusion is that the entire section has been superseded and that since the effective date of the State law, an infant under 16 years of age, who holds an operator's license from the Division of Motor Vehicles and drives a car in Richmond, violates no law.

The fact that the ordinance carried a saving provision to the effect that if any part of it were declared unconstitutional it would not affect the validity of the remaining portion, will not save it in this case from nullification by the State law. Such a provision accomplishes no more

than to reverse the presumption that the legislature intends an act to be effective as an entirety; that it is inseparable and if any provision is unconstitutional the presumption is that the remaining provisions fall with it. But where there is such a saving clause in the statute, the presumption is that the statute is separable and the valid portion may stand even though a portion is invalid. However, under either rule, in the end the test is "What was the intent of the law-makers?"

In *Carter* v. *Carter Coal Co.*, 298 U. S. 238, 56 S. Ct. 855, 873, 80 L. Ed. 1160, at pages 1189 and 1190, the court stated the rule thus: "The presumption is that the legislature intends an act to be effective as an entirety—that is to say the rule is against the mutilation of a statute; and if any provision be unconstitutional, the presumption is that the remaining provisions fall with it. The effect of the statute is to reverse this presumption in favor of inseparability, and create the opposite one of separability. Under the non-statutory rule, the burden is upon the supporter of the legislation to show the separability of the provisions involved. Under the statutory rule, the burden is shifted to the assailant to show their inseparability. But under either rule, the determination, in the end, is reached by applying the same test—namely, What was the intent of the lawmakers?

"Under the statutory rule, the presumption must be overcome by considerations which establish 'the clear probability that the invalid part being eliminated the legislature would not have been satisfied with what remains,' *Williams* v. *Standard Oil Co.*, 278 U. S. 235, 241 et seq., 49 S. Ct. 115, 73 L. Ed. 287, 309, 60 A. L. R. 596; or, as stated in *Utah Power & L. Co.* v. *Pfost*, 286 U. S. 165, 184, 185, 52 S. Ct. 548, 76 L. Ed. 1038 [1048, 1049], 'the clear probability that the legislature would not have been satisfied with the statute unless it had included the invalid part.' Whether the provisions of a statute are so interwoven that one being held invalid the others must fall, presents a question of statutory construction and of legislative intent, to the deter-

mination of which the statutory provision becomes an aid. 'But it is an aid merely; not an inexorable command.' *Dorchy* v. *Kansas,* 264 U. S. 286, 290, 44 S. Ct. 323, 68 L. Ed. 686 [689]. The presumption in favor of separability does not authorize the court to give the statute 'an effect altogether different from that sought by the measure viewed as a whole.' *Railroad Retirement Board* v. *Alton R. Co.,* 295 U. S. 330, 362, 55 S. Ct. 758, 79 L. Ed. 1468 [1482]."

██ Since the effective date of the State law in 1932, what would be the offense of a minor under 16, holding an operator's license from the Division of Motor Vehicles, driving in Richmond, without a permit from the chief of police? If the ordinance were reconstructed it would provide no penalty for the offense. A criminal statute is unenforceable and is invalid unless it prescribes a penalty. Since the effective date of the State law the record shows that the city of Richmond has never attempted to enforce the ordinance in a single case; that the city through its proper officers considered that the entire section 65 of the ordinance had been invalidated by the State law, and that the legal department of the city had given the enforcement officers an opinion that a minor under the age of 16 years who held a license from the Division of Motor Vehicles could lawfully operate a car in Richmond. The city authorities have admitted that the entire section 65 has been abrogated. It is elementary that the practical construction given a doubtful statute or ordinance by the public officials and acted upon by the public is of considerable weight in construing it. *Atlantic & D. Ry. Co.* v. *Lyons,* 101 Va. 1, 42 S. E. 932; *Virginia Coal & Iron Co.* v. *Keystone, etc., Co.,* 101 Va. 723, 45 S. E. 291; *Roanoke Ry. & Electric Co.* v. *Brown,* 155 Va. 259, 154 S. E. 526; *Commonwealth* v. *Armour & Co.,* 118 Va. 242, 87 S. E. 610; *City of Richmond* v. *Drewry-Hughes Co.,* 122 Va. 178, 90 S. E. 635, 94 S. E. 989; *Barber* v. *City of Danville,* 149 Va. 418, 141 S. E. 126; *Lipscomb* v. *Nuckols,* 161 Va. 936, 172 S. E. 886; *Smith* v. *Kelley,* 162 Va. 645, 174 S. E. 842.

Our conclusion is that section 65 of the ordinance is invalid in its entirety; that the minor son of J. W. Hannabass was not operating the automobile at the time of the accident in question "under the age limit fixed by law"; and that the judgment should be reversed and the demurrer overruled.

*Reversed and remanded.*