# CIRCUIT COURT OF ALBEMARLE COUNTY

Charlottesville Redevelopment
and Housing Authority

v.

City of Charlottesville

1959

BY JUDGE LYTTLETON WADDELL

In this matter, realizing the desirability of an early decision, I shall dispense with all preliminary statements of the facts in the case which are clearly understood and shall give in as brief form as possible my reasons for my decision in the case.

The questions to be decided are, as I understand it, first, whether the so-called McCue Act is a special act, and second, if it is a special act, does it violate the provisions of § 63, § 64, or § 117 of the Constitution.

It seems to me clear that the Act is a special act within the principles set forth in *Martin v. Commonwealth*, 126 Va. 603 (1920); *Quesinberry v. Hull*, 159 Va. 270 (1932); *Shulman Co. v. Sawyer*, 167 Va. 386 (1937); and *County Board of Fairfax County v. American Trailer Co.*, 193 Va. 72 (1951).

Classification by density of population may be, and frequently is, a valid means of classification, but it is required that there be some reasonable relationship between the object of the act and the classification made. In this case, I am unable to find any possible reason why a referendum should be required in cities having population in excess of 25,000 and not in excess of 35,000 and not required in cities having either greater or less population. The ingenious reasoning of counsel for the City seems to me entirely unrealistic. I realize that the legislature has frequently used this form of classification and that in a great many cases it has not been questioned. This does not mean,

however, that it is a proper basis for classification. The case of *Shulman Co. v. Sawyer* is, in my opinion, directly in point and controlling of this phase of the case. Having reached a conclusion that the Act is a special act, the next question is whether it violates any of the three sections of the Constitution above mentioned.

Turning first to § 117 of the Constitution, it is to be noted that it was not alleged in the bill that the Act violated § 117, and this claim seems to have been something of an afterthought. I shall say no more of the effect of this section than to express the opinion that the Act is not, as I see it, a law "for the organization and government of a city or town."

Turning now to § 63 of the Constitution, counsel for the Housing Authority contend that the Act violates two subsections of § 63. The first of these is the subsection prohibiting special acts "remitting, releasing, postponing or diminishing any obligation or liability of any person, corporation, or association to the State or any political subdivision thereof."

Counsel for the City take the position that the subsection does not refer to or prohibit special acts defining the obligations of the several political subdivisions as between themselves but only to obligations or liabilities of private persons, corporations, or associations. It seems to me that this position is well taken, and no authority is cited in which it has been suggested that the subsection should not be so construed. However, even if the section in question is not to be construed as above set forth, I do not find in the Act anything that diminishes any obligation or liability of the Housing Authority to the City of Charlottesville or *vice versa*. The Housing Authority is not prohibited by the Act from doing anything that the City of Charlottesville could require it to do, and the City is not prohibited from doing anything that the Housing Authority could require it to do. It merely provides for an election as a prerequisite to any substantial activity of the Housing Authority.

The complainant also contends that the Act violates Subsection 11 of § 63 prohibiting special legislation for conducting elections or designating the places of voting. As authority for this position, they cite principally the case of *Quesinberry v. Hull*, 159 Va. 270. The exact basis of the decision in this case is somewhat uncertain, but in *Porter v. Joy*, 188 Va. 801 (1949), Justice Staples speaking for the Supreme Court of Appeals expressly decides that *Quesinberry v. Hull* is not authority for the position taken by the complainant and holds that the prohibition contained in this Subsection is directed against acts which might "confer upon a county the authority to set up its own regulations with respect to the time of opening and closing of the polls, the selection of the judges, and the many other matters relating to the conduct of

elections" and does not apply to a special act requiring an election in certain cases in certain localities. A similar decision must have been reached in the Federal case of *Schofield Engineering Co. v. City of Danville*, 126 F.2d 942 (1942). The situation in that case was very similar to the situation here involved. In a general act designed to facilitate acceptance of grants from and making contracts with the Public Works Administration, there was a special section requiring a referendum in the Cities of Roanoke and Danville before any bonds should be issued. It was held that this violated none of the provisions of § 63 of the Constitution of Virginia.

I am of the opinion that the Act in question does not violate either Subsection 8 or Subsection 11 of § 63 of the Constitution of Virginia.

Turning now to the effect of the second sentence of § 64 of the Constitution, a much more serious question is presented, a question which is complicated by what appears to be a conflict between two decisions of the Supreme Court of Appeals.

For the complainant, it is contended that the decision in *Dean v. Paolicelli*, 194 Va. 219 (1952), is directly in point and is controlling; for the respondent, the same claim is made for *Porter v. Joy*, 188 Va. 801. Both claims appear to have some validity, and unless some reasonable distinction between the cases can be made, it would seem that the later case should be controlling.

It is to be noted that *Dean v. Paolicelli* does not overrule *Porter v. Joy* in terms, nor is the earlier decision cited. It is also true that the decision in *Porter v. Joy* is, as suggested by counsel for the complainant, a "double barreled" decision which somewhat lessens its persuasiveness. On the other hand in *Porter v. Joy*, the form of the legislative procedure considered is identical with that in the case at bar, which is not true in *Dean v. Paolicelli*. We are then faced with the question whether the fact that the statute involved in the later case in terms amended a particular general act, while the acts involved in *Porter v. Joy* and the case at bar do not amend any specific general act except as they do so by implication furnish a true distinction between the cases.

In determining the effect and extent of any statutory or constitutional prohibition, it is necessary to consider at what evil or undesirable practice the prohibition is directed. It may be argued that the second sentence of § 64 is designed to prevent in general the enactment of special laws on a subject covered by general law. However, it is true, as conceded by counsel for the Housing Authority that a provision having the effect of a special act may be included in a general law upon its original passage without violation of § 64. Nor, in my opinion, does that section prohibit the enactment of all special acts which may in some measure vary the effect of some general law. See *Wilburn*

*v. Raines*, 111 Va. 334 (1910). It is hard to imagine a special act which does not to some extent alter the impact of some general law. It seems to me clear that, if the draftsmen of our Constitution intended such a result, they would have expressly provided that no special act should be adopted in any field covered by general law. They did not so provide but instead undertook to specify in § 63 the subjects with reference to which special legislation was prohibited.

It is a cardinal rule of construction and decision in cases such as this that any doubt as to the effect of a constitutional provision must be resolved so as to sustain the questioned legislation. Applying this rule, it seems to me that the second sentence of § 64 must be construed as directed at the practice, deemed undesirable by the framers of our Constitution, of obtaining the passage of special legislation by including it by way of amendment in a general law. This is admittedly a narrow construction of the language of the section, but limitations of legislative power are required to be so construed. Moreover, this construction seems to me to have been approved by the Supreme Court of Appeals in *Wilburn v. Raines*, 111 Va. 334, and *Porter v. Joy*, 188 Va. 801. I am of the opinion that the Act in question does not violate § 64 of the Constitution.

I have already announced at the time of oral argument that I did not consider that the evidence showed any approval by the Council of the City of any housing prior to January 1, 1959, within the terms of the Act.

The only other ground for the relief claimed in the bill is based on the alleged vagueness of the terms of the Act. The language complained of is substantially the same as the language of § 36-19.2 requiring approval by the Council; § 36-19.3 merely requires in addition the approval of the voters. Yet counsel for the Authority contend that the Council of the City has already complied with § 36-19.2. The time of election and form of ballot may certainly be fixed by the Council of the City. I see no difficulty in carrying the provisions of § 36-19.3 into effect.

For the reasons hereinabove set forth, a decree will be entered denying the relief prayed for and dismissing the bill.